IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

MARKOS N. PAPPAS,                    )
                                     )
            Plaintiff,               )
                                     )
                                     )        CIV-12-753-F
v.                                   )
                                     )
UNITED STATES OF AMERICA,            )
                                     )
            Defendant.               )


SUPPLEMENTAL REPORT AND RECOMMENDATION

Plaintiff, a federal prisoner appearing *pro se* and *in forma pauperis*, brings this action

under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671-2680, against

Defendant United States of America ("USA").[1]   The matter has been referred to the

undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C.

§636(b)(1)(B).

I. FTCA

"In the FTCA, Congress waived the United States' sovereign immunity for claims

arising out of torts committed by federal employees." Ali v. Federal Bureau of Prisons, 552

U.S. 214, 217-218 (2008)(citing 28 U.S.C. § 1346(b)(1)).   In relevant part, the FTCA

authorizes "claims against the United States, for money damages . . . for injury or loss of

_____

[1] Although granted *in forma pauperis* status, the Court's record shows that Plaintiff has paid
all of the required filing fee.

1

property . . . caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment." Id. at 218. See 28 U.S.C. § 1346(b)(1). "This unequivocal waiver of immunity must be construed narrowly and the limitations and conditions upon which the Government consents to be sued must be strictly observed and exceptions thereto are not to be implied." Miller v. United States, 463 F.3d 1122, 1123 (10th Cir. 2006)(quotations omitted). See Lane v. Pena, 518 U.S. 187, 192 (1996)(waiver of government's sovereign immunity must be strictly construed in favor of the sovereign).

II. Plaintiff's Claims

In ground one of his Complaint filed July 2, 2012, Plaintiff seeks damages from Defendant USA stemming from the alleged "physical/emotional injuries" he sustained as a result of certain disciplinary punishment imposed upon him by a United States Bureau of Prisons ("BOP") official, Disciplinary Hearing Officer J. Haines ("DHO Haines"), and carried out by other unnamed BOP officials. Plaintiff alleges that, as punishment for two misconducts imposed in a disciplinary proceeding, he was deprived of a mattress and bedding "at all on Feb. 17-18 and 21-25" and "for a minimum of 14 hours on all other dates" between February 15, 2011 and March 17, 2011.

Plaintiff describes his injuries as "(1) severe neck/back pain, leg pain, and numbness on parts of his body that were in contact with the concrete floor and cold metal bunk frame; (2) extreme headaches; (3) flu-like symptoms due to exhaustion and muscle fatigue caused by the sleep deprivation and torturous stress conditions/positions plaintiff was forced to

endure; and (4) constant nervousness and nightmares." Complaint, at 3.

In ground two of the Complaint, Plaintiff seeks damages from Defendant USA for the alleged physical and emotional "injuries" he received as a result of the deprivation of a "minimum" amount of "out-of-cell exercise" during the period of December 7, 2010 to June 25, 2011, while he was confined in a segregated housing unit. Plaintiff also alleges in this claim that BOP officials "falsely mark[ed] down that plaintiff 'refused' out-of-cell exercise" and that he alerted prison officials "he was falsely being marked down as refusing out-of-cell exercise when that was not the case, but they failed to correct the problem. . . ."

Plaintiff describes his injuries as "(1) muscle atrophy and pain; (2) severe low back pain; (3) breathing problems; (4) eye irritation/infection/swelling; (5) emotional distress; and (6) loss of good conduct time credits and additional restrictions/sanctions due to behavioral issues (and resulting disciplinary actions) caused by emotional distress." Complaint, at 4.

Plaintiff seeks damages of $150,000.00 for the alleged "physical/emotional injuries" caused by the "negligent/wrongful deprivation of a mattress by BOP employees over a 30-day period" described in ground one. He seeks damages of $140,000.00 for the alleged "physical/emotional injuries caused by the deprivation of out-of-cell exercise for substantial periods of time over a 6 month period due to negligent/wrongful conduct by BOP employees" described in ground two.

III. Defendant's Motion

Defendant USA has moved to dismiss the action under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction or, alternatively, Fed. R. Civ. P. 12(b)(6) for failure to state

a plausible FTCA claim for relief. Plaintiff has responded to the Motion to Dismiss, and Defendant has filed a Reply. For the following reasons, it is recommended that the Motion to Dismiss be granted.

IV. <u>Background</u>

At the time Plaintiff filed his Complaint, he was incarcerated at the United States Penitentiary in Lewisburg, Pennsylvania, and he was subsequently transferred to the Federal Correctional Center in Coleman, Florida. The claims asserted in the Complaint, however, are related to his previous confinement at the Federal Correctional Institution in El Reno, Oklahoma ("FCI El Reno").

On February 1, 2011, Plaintiff was charged at FCI El Reno with two misconduct offenses, Disruptive Conduct of a Greatest Severity Most Like Rioting and Refusing to Obey an Order, in Incident Report Number 2119655. In a disciplinary hearing conducted at the prison on February 15, 2011, concerning this Incident Report, Plaintiff was found guilty of the misconduct offenses of Encouraging a Group Demonstration and Refusing to Obey an Order.

As reasons for the guilty finding, DHO Haines stated that he "base[d] this finding on the reporting officer's written statement" of the offenses, which indicated that on February 1, 2011, he observed that Plaintiff had covered his cell door window with paper and when directed to remove the paper Plaintiff stated to the officer, "Come take the [expletive] paper down if you don't like it. You and the other [expletives] C/O's can suit up like real men. Don't nobody take their [expletive] down until we get our [expletive]." DHO Haines stated

4

that he also based the guilty finding on Plaintiff's statement to DHO Haines during the hearing that "I did these action[s]. But, all my actions were justified. If I hadn't a [sic] caused a problem, I wouldn't have gotten what I wanted." DHO Haines further noted as reasoning for the guilty finding that "[w]hen the DHO tried to explain to [Plaintiff] that committing a prohibited act to get what you want is never justified, [Plaintiff] answered 'yes it is.'"

As sanctions for the misconducts, DHO Haines imposed disciplinary measures, including the loss of good conduct time credits, 30 days in disciplinary segregation, and "[i]mpound Mattress from 0700-1900 while on [d]isciplinary segregation." DHO Haines stated that "[t]he additional sanction impounding you[r] mattress during daylight hours while on disciplinary segregation is imposed due to your continued disruptive nature in the special housing unit and to impress upon you that further misconduct on your part will only result in greater sanctions."

Plaintiff received a copy of the hearing report. Plaintiff appealed the misconducts. In the first stage of his administrative appeal, the National Inmate Appeals administrator advised Plaintiff that his appeal was denied. With respect to the finding of guilt, the administrator stated "[w]e find it reasonable for the DHO to have made this determination based on the reporting officer's written statement indicating you had your cell door window covered with paper. You were ordered to take the paper down and you refused. In addition, you began to yell to other inmates to do the same. We concur that the evidence is sufficient to support the DHO decision."

With respect to the mattress impoundment punishment, the administrator stated "[a] review of your assertion that it is inappropriate to remove the mattress from your room has also been conducted. The review indicated that the removal of the mattress from your room during times when inmates are not ordinarily sleeping is appropriate. There is no evidence this sanction is arbitrary, capricious or retaliatory."

In the second stage of his administrative appeal, BOP's Regional Director affirmed the decision and denied Plaintiff's appeal. With respect to Plaintiff's contention that the sanction of removal of his mattress was an inappropriate sanction, the Regional Director stated that Plaintiff was "request[ing] the incident report be expunged or you receive $5,000 per day for each day the mattress was removed from your cell. To the extent you seek monetary compensation, such relief is not available through the Administrative Remedy Program. Should you wish to pursue monetary compensation, you may do so by submitting an administrative claim in accordance with the procedures specified in Program Statement 1320.06, Federal Tort Claims Act."

Plaintiff submitted an administrative tort claim for damages for alleged "sleep deprivation, torture, and the physical and emotional injuries stemming from the negligent/wrongful deprivation of a mattress for a 30-day period."[2] He alleged in the claim

_____

[2] He specifically alleged that "[t]he 'Impound Mattress' sanction was executed between February 16, 2011 and March 17, 2011. Claimant did not have a mattress at all on February 17-18, and 21-25. On all other dates claimant's mattress and bedding was removed before 0700 (usually 0630) and returned no earlier [sic] than 2030 until March 17, 2011 when the sanction was lifted. Thus, on the dates during that 30 day period when claimant was provided with a mattress it was typically after the expiration of 14 hours." Plaintiff further alleged that he "reported his illness and pain to medical staff verbally and in writing on various dates between February 17, 2011 and March 17, 2011," and that he "followed the treatment medical staff recommended for his illness and pain

that "the DHO had no authority to impose such a sanction" under BOP rules or regulations, that the mattress punishment "was violative [sic] of the Universal Human Rights of claimant and was otherwise in conflict with positions taken by the Obama Administration," and that "the sanction was violative [sic] of claimant's constitutional, statutory, and regulatory rights."

This claim was denied. Plaintiff was advised in the denial letter dated December 16, 2011, that his "claim appears to contest the sanctions imposed by the DHO of February 15, 2011" and "[s]uch a claim is not cognizable pursuant to the FTCA." Further, the letter advised Plaintiff that his "Central File and Medical Records indicate there is no evidence that you have suffered any physical or emotional injury as a result of the sanctions imposed by the DHO. You have provided no evidence of any negligence on the part of any BOP staff member."

Plaintiff submitted a separate administrative tort claim for damages for alleged "negligent/wrongful disregard of federal regulations which mandate a minimum period of out-of-cell exercise for inmates in a BOP SHU and the physical and emotional injuries resulting therefrom." He alleged that the negligent acts occurred at "[v]arious times" between December 7, 2010 and June 25, 2011.

This claim was denied. In a denial letter dated December 16, 2011, Plaintiff was advised that with respect to his claim he was "denied 5 hours of outside recreation per week"

but his ailments persisted due to the continual hardship of being forced to sit/lay on a cold metal bunk frame with no mattress, sheets, or blankets."

from December 7, 2010 to August 22, 2011,

> [i]nvestigation reveals that while you were incarcerated in the Special Housing Unit (SHU) at FCI El Reno, you refused outside recreation 99 times. Twenty-seven of those times, you requested access to the law library instead, which was granted. You accepted outside or inside recreation 36 times. The evidence clearly shows that you were afforded the opportunity while in the SHU at FCI El Reno to take outside recreation but refused it on most occasions.

On October 15, 2012, Plaintiff also filed a 28 U.S.C. § 2241 petition for habeas corpus relief in the United States District Court for the Middle District of Pennsylvania, Case No. CIV-12-2070. In his Petition filed October 15, 2012, Plaintiff challenged the results of three disciplinary hearings in which he was found guilty of misconducts, including Incident Report Number 2119655. One of Plaintiff's claims in the habeas action was that the DHO imposed an unlawful sanction of mattress deprivation. The assigned Magistrate Judge entered a report and recommendation finding that Petitioner's due process rights were not violated and there was more than some evidence to support the DHO's decision.[3] This report and recommendation was adopted by the assigned District Judge, and the petition was dismissed.

V. Standard of Review

Defendant USA's Motion to Dismiss the cause of action under Fed. R. Civ. P. 12(b)(1) is a "facial attack on the complaint's allegations regarding subject matter jurisdiction [which] questions the complaint's sufficiency and requires the court to accept the

---

[3] Motion to Dismiss, Ex. 8 (Markos Pappas v. USP Allenwood Warden, Case No. 1:CV-12-2070 (M.D.Penn. May 9, 2013)(Report and Recommendation, Blewitt, M.J., at 13)(unpublished op.).

allegations as true." <u>Smith v. United States</u>, 561 F.3d 1090, 1097-1098 (10th Cir. 2009). With respect to Defendant USA's Motion to Dismiss the cause of action under Fed. R. Civ. P. 12(b)(6), "[t]he court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's . . . complaint alone is legally sufficient to state a claim for which relief may be granted." <u>Miller v. Glanz</u>, 948 F.2d 1562, 1565 (10th Cir. 1991). To survive a Rule 12(b)(6) motion, the plaintiff must allege sufficient facts to make the "claim for relief . . . plausible on its face." <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 557 (2007). Under this standard, the plaintiff's well-pleaded factual allegations are accepted as true and viewed in the light most favorable to the nonmoving party. <u>Alvarado v. KOB-TV, L.L.C.</u>, 493 F.3d 1210, 1215 (10th Cir. 2007).

VI. <u>The Court Lacks Jurisdiction Over Claims Alleging Constitutional Violations</u>

In Plaintiff's first ground for relief against Defendant USA, Plaintiff alleges that the conduct of BOP officials at FCI El Reno in imposing the mattress-removal sanction and carrying out this disciplinary sanction was "a clear violation of, inter alia, clearly established legal standards and federal regulations. . . ." In his second ground for relief, Plaintiff again alleges a violation of federal regulations and/or his constitutionally-protected rights concerning the provision of exercise for inmates confined in a special housing unit.

As support for its Motion to Dismiss, Defendant USA contends that Plaintiff has alleged violations of the Constitution that do not invoke the Court's jurisdiction under the FTCA. In response, Plaintiff concedes that "the denial of a mattress, bedding, and exercise are recognized as constitutional violations," and he should  be allowed to amend his

9

Complaint "to add constitutional claims and BOP staff who had any role in the constitutional violations as defendants." Plaintiff's Response, at 14.

The United States may be held liable under the FTCA only "where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1); see also 28 U.S.C. § 2674 ("The United States shall be liable respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances."). In other words, "an action under FTCA exists only if the State in which the alleged misconduct occurred would permit a cause of action for that misconduct to go forward." Carlson v. Green, 446 U.S. 14, 23 (1980). See United States v. Orleans, 425 U.S. 807, 813 (1976)("The [FTCA] is a limited waiver of sovereign immunity, making the Federal Government liable to the same extent as a private party for certain torts of federal employees acting within the scope of their employment.").

The FTCA is not a remedy for violations of citizens' constitutional rights. Id. Because the "law of the State [is] the source of substantial liability under the FTCA," the "United States simply has not rendered itself liable under § 1346(b) for constitutional tort claims." FDIC v. Meyer, 510 U.S. 471, 478 (1994).

In this case, the acts alleged by Plaintiff occurred within the State of Oklahoma. "To establish negligence liability for an injury under Oklahoma law, [the state in which the claims arose,] plaintiffs must prove that (1) defendants owed them a *duty to protect* them from injury, (2) defendants *breached that duty*, and (3) defendants' *breach was a proximate cause*

of plaintiff's injuries." <u>Beugler v. Burlington N. & Santa Fe Ry. Co.</u>, 490 F.3d 1224, 1227 (10th Cir. 2007)(quotation omitted)(emphasis in original).

Plaintiff does not allege a breach of any duty under Oklahoma law. In his claims, Plaintiff alleges that the conditions of his confinement in FCI El Reno's SHU violated his constitutional rights. These constitutional claims are not within the purview of the FTCA. <u>See</u> <u>Farmer v. Brennan</u>, 511 U.S. 825, 847 (1994)(holding prison official acts with deliberate indifference in violation of Eighth Amendment "if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it").

The Court lacks jurisdiction to consider his constitutional claims against Defendant USA under the FTCA, and his FTCA claims for damages for alleged constitutional violations must be dismissed with prejudice for failure to state a claim upon which relief may be granted. <u>See</u> <u>FDIC v. Meyers</u>, 510 U.S. 471 (1994)(constitutional torts are not cognizable under the FTCA); <u>Liranzo v. United States</u>, 690 F.3d 78, 86 (2nd Cir. 2012)("The FTCA does not waive sovereign immunity for claims based solely on alleged violations of federal law.").

VII. <u>The Court Lacks Jurisdiction Over Claims Involving Discretionary Functions</u>

The FTCA exempts from its waiver of sovereign immunity certain types of claims, including claims "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a).

Defendant USA next contends that, even if it is assumed that the USA owed a duty

11

to Plaintiff under federal regulations for which the FTCA arguably provides a remedy, the BOP officials' conduct as alleged by Plaintiff falls within the exemption to federal jurisdiction for discretionary functions. Plaintiff responds that the "BOP staff ignored their duties and obligations imposed per specific and unequivocal federal regulations that . . . guide and govern the conduct of BOP staff" and therefore the discretionary function exception does not apply. Plaintiff's Response, at 8. Alternatively, Plaintiff contends that the issue of whether a discretionary function exception applies is a factual one for trial.

"This discretionary function exception poses a jurisdictional prerequisite to suit, which the plaintiff must ultimately meet as part of his overall burden to establish subject matter jurisdiction." Garcia v. United States Air Force, 533 F.3d 1170, 1175 (10th Cir. 2008)(quotation and citation omitted). "If the discretionary function exception applies to the challenged conduct, the United States retains its sovereign immunity and the district court lacks subject matter jurisdiction to hear the suit." Domme v. United States, 61 F.3d 787, 789 (10th Cir. 1995).

The intent of the discretionary function exception is "to prevent judicial 'second guessing' of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort." United States v. Varig Airlines, 467 U.S. 797, 814 (1984). The discretionary function exception applies to the actions of federal officials that involve "an element of judgment or choice." United States v. Gaubert, 499 U.S. 315, 322 (1991)(quotations and brackets omitted). "The requirement of judgment or choice is not satisfied if a 'federal statute, regulation, or policy specifically prescribes a course of

action for an employee to follow,' because 'the employee has no rightful option but to adhere to the directive.'" Id. at 322 (quoting Berkovitz v. United States, 486 U.S. 531, 536 (1988)). Thus, if a federal official failed to follow a mandatory regulation, the USA may be held liable. Id. at 324.

If it is determined that the action was based on choice, the reviewing court must then consider whether the action was "based on considerations of public policy" or, in other words, "to conduct that involves the permissible exercise of policy judgment." Berkovitz, 486 U.S. at 536-539.

> When established governmental policy, as expressed or implied by statute, regulation, or agency guidelines, allows a Government agent to exercise discretion, it must be presumed that the agent's acts are grounded in policy when exercising that discretion. For a complaint to survive a motion to dismiss, it must allege facts which would support a finding that the challenged actions are not the kind of conduct that can be said to be grounded in the policy of the regulatory regime.

Gaubert, 499 U.S. at 324-325. "If both of these conditions are met, the discretionary function exception applies and sovereign immunity doctrine precludes suit." Sydnes v. United States, 523 F.3d 1179, 1183 (10th Cir. 2008)(quoting Gaubert, 499 U.S. at 325).

The BOP has a duty pursuant to federal statute to "provide for the protection, instruction, and discipline of all persons charged with or convicted of offenses against the United States." 18 U.S.C. § 4042(a)(3). Under this statute, the BOP is "broadly entrusted" to provide for the protection and safekeeping of all prisoners "in very general terms." Santana-Rosa v. United States, 335 F3d. 39, 44 (1st Cir. 2003).

Because of the broad nature of the statutory obligations imposed on the BOP, the decisions of BOP officials are generally protected from judicial review by the FTCA's discretionary function exception. See Montez ex rel. Estate of Hearlson v. United States, 359 F.3d 392, 396 (6th Cir. 2004)("BOP officials are given no guidance, and thus have discretion, in deciding how to accomplish" the objectives set forth in the statute.). See also Cohen v. United States, 151 F.3d 1338, 1342 (11th Cir. 1998)("[E]ven if § 4042 imposes on the BOP a general duty of care to safeguard prisoners, the BOP retains sufficient discretion in the means it may use to fulfill that duty to trigger the discretionary function exception."); Thrower v. United States, __ Fed. Appx. __, 2013 WL 2392823 (3rd Cir. 2013)(unpublished op.)("While the BOP's conduct at issue is governed by a federal statute requiring the BOP to provide for the 'protection' and 'safekeeping' of inmates, see 18 U.S.C. § 4042(a)(2), the statute leaves the implementation of these duties to BOP officials' discretion.").

Moreover, the Supreme Court has repeatedly concluded that "a prison's internal security is peculiarly a matter normally left to the discretion of prison administrators." Rhodes v. Chapman, 562 U.S. 337, 349 n. 14 (1981). See also Bell v. Wolfish, 441 U.S. 520, 547 (1979)("Prison administrators . . . should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and maintain institutional security.").

A. BOP Official's Disciplinary Decision Falls Within Discretionary Function Exception

In carrying out its statutory obligations, the BOP has adopted regulations with respect

to disciplinary actions that may be taken by BOP officials. In 28 C.F.R. § 541.10(b), the BOP prescribes that "[t]he following general principles apply in every disciplinary action taken: . . . (2) Staff shall take disciplinary action *at such times and to the degree necessary* to regulate an inmate's behavior within the Bureau rules and institution guidelines and to promote a safe and orderly institutional environment."

With respect to the issuance of sanctions, "[t]he DHO may direct that an inmate be placed or retained in disciplinary segregation pursuant to guidelines" set forth in the BOP's regulations. 28 C.F.R. § 541.14(a)(d). A DHO may also impose the loss of privileges as a sanction, including "a loss of privilege not directly related to the offense when there is a lack of other appropriate sanctions or when imposition of an appropriate sanction previously has been ineffective." 28 C.F.R. § 541.14(2)(b).

In 2010, the BOP's regulations provided that an inmate in segregated housing for disciplinary purposes must be given "basic living levels of decency and humane treatment" and "[l]iving conditions may not be modified for the purpose of reinforcing acceptable behavior." "Where it is determined necessary to deprive an inmate of a usually authorized item, staff shall prepare written documentation as to the basis for this action, and this document will be signed by the Warden, indicating the Warden's review and approval." 28 C.F.R. § 541.21 (2010). The regulation further provides that "[a]ll cells must be equipped with beds. Strip cells may not be a part of the segregation unit." 28 C.F.R. § 541.21(c)(1). "Staff shall furnish a mattress and bedding. . . An inmate may not be segregated without clothing, mattress, blankets and pillow, except when prescribed by the medical officer for

medical or psychiatric reasons" 28 C.F.R. § 541.21(c)(3)(2010).

It is the 2010 version of the BOP's regulations upon which Plaintiff relies in his pleadings. However, the BOP undertook administrative procedures to amend its published regulations concerning inmate discipline and SHU regulations in 2010. Under regulations first adopted by the BOP in December 2010 but whose effectiveness, by a policy statement issued March 1, 2011, was delayed until June 20, 2011, a SHU is defined as a special housing unit designed to "help ensure the safety, security, and orderly operation of correctional facilities, and protect the public, by providing alternative housing assignments for inmates removed from the general population." 28 C.F.R. § 541.21 (effective June 20, 2011). According to the newly-amended BOP regulations, an inmate confined in segregated housing must be furnished a mattress and bedding "for sleeping." 28 C.F.R. § 541.31 (effective June 20, 2011); 75 Fed. Reg. 76263-01 (final rule; effective date Dec. 8, 2010); 76 Fed. Reg. 11078-01 (issued March 1, 2011, delaying effective date of final rule from Dec. 8, 2010, to June 20, 2011).

Given the fact that the relevant regulations governing segregated housing unit conditions were amended effective in December 2010 and the effectiveness of those amended regulations was delayed in March 2011, AFTER DHO Haines imposed the mattress-removal sanction upon Plaintiff in his February 2011 disciplinary proceeding, DHO Haines could reasonably have relied on the BOP's amended regulation which specified that a mattress and bedding must be provided to inmates confined in a SHU for sleeping purposes only. Additionally, it must be remembered that at the time of the relevant DHO proceeding

16

in which the mattress-removal sanction was imposed Plaintiff had already violated the prison's rules as he was confined in FCI El Reno's SHU.

In Plaintiff's responsive pleading, Plaintiff contends that even if the BOP's regulations allowed the removal of a mattress and bedding during non-sleeping hours at the time that DHO Haines imposed this particular disciplinary punishment upon him, there is no dispute that he was confined without a mattress for certain days during sleeping and non-sleeping hours, in violation of the revised federal regulations. The discretionary function exception applies even though the discretionary actions or failure to act is "abused" by a federal official. Plaintiff's allegation is that unidentified FCI El Reno officials who were responsible for carrying out the disciplinary punishment imposed by DHO Haines did not return his mattress and bedding for a 2-day period and later for a 4-day period but that he had his mattress and bedding returned to him for about 10 hours per day on the remaining days of the 30-day disciplinary period. Assuming the truth of Plaintiff's allegations, such conduct would not fall outside of the discretionary function exception.

Particularly in light of the broad discretion given prison officials in matters involving institutional security and the apparent reliance by DHO Haines on an amended regulation that allowed the disciplinary punishment imposed upon Plaintiff for his repeated misconducts, the discretionary function exception applies to Plaintiff's FTCA claim in ground one. Accordingly, Defendant USA's Motion to Dismiss Plaintiff's FTCA claim in ground one should be granted, and the cause of action dismissed with prejudice concerning this claim.

B. <u>BOP Officials' Provision of Exercise</u>

As to the issue raised in ground two of the Complaint, Defendant USA contends that the BOP's regulations require that "each segregated inmate [be provided] no less than five hours exercise each week." 28 C.F.R. § 541.21(c)(6). Plaintiff has not specifically alleged when he was not given the minimum amount of exercise during his approximate six-month confinement in SHU. The gist of his complaint in ground two is that BOP officials were fraudulently stating in the prison's records that he had refused exercise even when he had not refused exercise, but he does not indicate when the misrepresentation(s) occurred or were recorded by what official.

Even assuming, without finding, that Plaintiff has satisfied his burden of showing that the discretionary function exception does not apply to this claim, liability under the FTCA must be based on conduct that amounts to a tort under state law. <u>See</u> <u>United States v. Olsen</u>, 546 U.S. 43, 44 (2005)(FTCA is waiver of United States' sovereign immunity only "where local law would make a "private person" liable in tort). Plaintiff has asserted that BOP officials' INTENTIONALLY ignored BOP regulations concerning the provision of exercise to inmates confined in a prison's SHU. Nevertheless, he has characterized the claim as one arising from Oklahoma's tort of intentional infliction of emotional distress.

In Oklahoma, a claim of intentional infliction of emotional distress is an independent tort which requires proof by the plaintiff that "(1) the defendant acted intentionally or recklessly; (2) the defendant's conduct was extreme and outrageous; (3) the defendant's conduct caused the plaintiff emotional distress; and (4) the emotional distress was severe."

Estate of Trentadue ex re. Aguilar v. United States, 397 F.3d 840, 855-856 (10th Cir. 2005)(applying Oklahoma law). "The second element of the tort requires proof that the tortfeasor's conduct was 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community.'" Id. at 856 (quoting Kraszewski v. Baptist Med. Ctr. of Okla., Inc., 916 P.2d 241, 248 n. 25 (Okla. 1996)(internal quotation omitted)). Additionally, "the setting in which the conduct occurred" must be considered in determining whether the tortfeasor's conduct was extreme and outrageous. Id. The "fourth element requires proof that the plaintiff's emotional distress was 'so severe that no reasonable [person] could be expected to endure it.'" Id. (quoting Computer Publications, Inc. v. Welton, 49 P.3d 732, 736 (Okla. 2002). "The intensity and the duration of the distress are factors to be considered in determining its severity." Breeden v. League Services Corp., 575 P.2d 1374, 1378 n. 6 (Okla. 1978).

Plaintiff alleges in the Complaint that he was not given the "minimum period of out of cell exercise" to which he was entitled under federal regulations "over a 6 month period (12/7/10 - 6/25/11)," even though he "gave notice" to BOP officials that "he was being deprived of out-of-cell exercise by staff who would falsely make down that plaintiff 'refused' out-of-cell exercise." Complaint, at 4. In Plaintiff's tort claim submitted to the BOP regarding this issue, Plaintiff alleged only that "[w]henever staff denies [sic] claimant out-of-cell exercise they mark down that he 'refused' when that is not at all true." Motion to Dismiss, Ex. 5, at 3. In response to Plaintiff's tort claim concerning this allegation, the BOP

advised Plaintiff that an investigation of the time Plaintiff spent in the SHU at FCI El Reno revealed that he "refused outside recreation 99 times. Twenty-seven of those times, you requested access to the law library instead, which was granted. You accepted outside or inside recreation 36 times." Motion to Dismiss, Ex. 6., at 1-2.

Plaintiff's allegations, as set forth in his Complaint and in his tort claim submitted to the BOP, are that BOP officials sometimes recorded him as having refused out-of-cell exercise when he did not actually refuse out-of-cell exercise. This claim is nowhere close to alleging a claim of extreme and outrageous conduct. Accordingly, Defendant USA's Motion to Dismiss Plaintiff's claim in ground two should be granted because Plaintiff has not stated a plausible claim for negligence under Oklahoma law.

VIII. <u>Allowing Amendment of Complaint Would Be Futile</u>

Plaintiff has indicated in his responsive brief that he may request the opportunity to amend his Complaint to assert a <u>Bivens</u> cause of action against individual federal officials. <u>See</u> <u>Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics</u>, 403 U.S. 388 (1971). However, he did not request leave to amend his Complaint. Even if Plaintiff made or will make such a request, the request should be denied.

Congress has not established a federal statute of limitations for <u>Bivens</u> actions. Therefore, the Court must look to the most analogous state statute of limitations. <u>See</u> <u>Owens v. Okure</u>, 488 U.S. 235, 239 (1989); <u>Wilson v. Garcia</u>, 471 U.S. 261, 267 (1984). For <u>Bivens</u> actions brought in Oklahoma, the two-year statute governing actions for personal injuries, Okla. Stat. tit. 12, § 95(3) (2000), provides the appropriate statute of limitations. <u>See</u>

20

Indus. Constructors Corp. v. U.S. Bureau of Reclamation, 15 F.3d 963, 968 (10th Cir. 1994)(holding Bivens claims are "subject to the statute of limitations of the general personal injury statute in the state where the action arose").   Thus, Plaintiff had two years from the date his cause of action accrued to file his Bivens action.

A claimant's federal cause of action accrues when the claimant knew or had reason to know "of the existence and cause of injury which is the basis for his action." Id. at 969. "A plaintiff has reason to know of his injury when he should have discovered it through the exercise of reasonable diligence." Id.   See Rotella v. Wood, 528 U.S. 549, 555 (2000)("Federal courts, to be sure, generally apply a discovery accrual rule when a statute is silent on the issue...."). Under this accrual rule, it is the "discovery of the injury, not discovery of the other elements of a claim, [that] starts the clock." Rotella, 528 U.S. at 555. See Indus. Constructors Corp., 15 F.3d at 969 ("[A] plaintiff need not know the full extent of his injuries before the statute of limitations begins to run.").

Plaintiff became aware of his alleged injuries at the latest on March 17, 2011, as to his claim in ground one, and on June 25, 2011, as to his claim in ground two. Because more than two years have past since his Bivens action accrued, Plaintiff would be barred by the applicable statute of limitations from raising his claims against individual federal officials under Bivens. Therefore, any request by Plaintiff to amend his Complaint to assert a Bivens action against individual federal officials should be denied.

RECOMMENDATION

Based on the foregoing findings, it is recommended that Defendant USA's Motion to

Dismiss be GRANTED and that the cause of action be DISMISSED with prejudice for lack of jurisdiction as to ground one and for failure to state a plausible claim for relief under the FTCA as to ground two. The parties are advised of their respective right to file an objection to this Supplemental Report and Recommendation with the Clerk of this Court by December 9th, 2013, in accordance with 28 U.S.C. § 636. The failure to timely object to this Supplemental Report and Recommendation would waive appellate review of the recommended ruling. Moore v. United States, 950 F.2d 656 (10th Cir. 1991); cf. Marshall v. Chater, 75 F.3d 1421, 1426 (10th Cir. 1996)("Issues raised for the first time in objections to the magistrate judge's recommendation are deemed waived.").

This Supplemental Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in the captioned matter, and any pending motion not specifically addressed herein is denied.

DATED this _____19th_____ day of _____November_____, 2013.


GARY M. PURCELL
UNITED STATES MAGISTRATE JUDGE